IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| ex rel. DOUGLAS KNISELY, et al. | : | |
| | : | |
| v. | : | |
| | : | |
| CINTAS CORPORATION, INC. | : | NO. 10-1193 |

MEMORANDUM

Dalzell, J.                                                                                    March 14, 2014

Relator Douglas Knisely ("Knisely") brings this action under the False Claims Act

(hereinafter "FCA"), 31 U.S.C. § 3729 et seq., alleging that Cintas Corporation, Inc. ("Cintas")

submitted false claims to the United States for payment for shredding services that failed to

comply with size specifications in Cintas's Government contracts.  Knisely also alleges that

Cintas violated the Lanham Act, 15 U.S.C. § 1125(a), by misrepresenting its compliance with

government shredding contracts in order to win other shredding business.  Before us are Cintas's

motion to dismiss, Knisely's opposition thereto, Cintas's reply and Knisely's surreply.  For the

reasons detailed below, we will grant Cintas's motion in part and deny it in part.


I.       **Background**

         A.       The Parties

         Knisely owns and operates Knisely Security LLC which through a subsidiary provides

shredding services in central Pennsylvania.  First Amended Complaint ("FAC") at ¶¶ 17-19.

Cintas is a publicly-traded $4 billion (revenue) company that offers nationwide shredding

services through one of its four subsidiaries.  Id.  ¶¶ 42, 44, 45, 48.  Knisely Security and Cintas

are direct competitors in central Pennsylvania.  Id. ¶ 250.  In 2010, relator Knisely brought this

qui tam action under seal, pursuant to the False Claims Act, against Shred-It USA, Inc., Iron

Mountain, Inc., and Cintas, alleging that each defendant knowingly submitted false claims for payment for shredding services that failed to comply with the size specifications mandated in their contracts with the Government.  Id. ¶¶ 1-5.   The False Claims Act encourages those with knowledge of fraud against the Government to bring an action as individuals and on behalf of the Government in exchange for a share of any recovery -- including civil penalties for each false claim and up to three times the Government's damages.  FAC ¶¶ 13-15.

On March 12, 2012, the Government notified the Court of its decision not to intervene. We subsequently unsealed the First Amended Complaint on November 27, 2012.  On December 21, 2012, Iron Mountain reached a settlement with Knisely and the United States and we therefore dismissed it from the case.  On April 11, 2013, Shred-It also settled with Knisely and the United States and we subsequently dismissed it as well.[1]  On August 14, 2013 we ordered Knisely to serve the unsealed amended complaint on Cintas.

We have federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a) as Knisely brings his claims pursuant to the False Claims Act.

    B.    <u>Relator's Allegations</u>

        1.    <u>False Claims Act Violations</u>

In his complaint Knisely alleges that Cintas has been providing document shredding services under a General Services Administration ("GSA") schedule to government agencies since at least 2004.  FAC ¶¶ 71, 82, 160.[2]  Federal agencies may use a vendor once the GSA

---

[1] Iron Mountain paid $800,000.00 and Shred-It paid $300,000.00 to the Government to settle these claims, <u>see</u> July 9, 2013 Department of Justice Press Release at <u>http://www.justice.gov/usao/pae/News/2013/July/shred-it_release.htm</u> (last accessed on March 7, 2014).

[2] Because we here consider a motion to dismiss, we accept all well-pled allegations as true. <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).

accepts that vendor's offer in response to a GSA solicitation.  Id.  ¶¶ 77, 81.  A vendor who

chooses to submit an offer in response to a GSA solicitation agrees to the terms and conditions of

the contract identified in the solicitation.  Id. ¶ 78.

The GSA requirements for shredding and other so-called Destruction Services cover less

than three pages of the 165-page document known as a Multiple Award Schedule ("MAS" or

"schedule") that solicits vendors for all manner of goods and services.  Id. ¶ 84, see also FAC,

Ex. A at 22.  Destruction services include:

> [O]n-site and off-site services of classified and unclassified paper
> documents, materials and magnetic media.  The methods for
> destruction services may be obtained through these destruction
> options: shredding (e.g., paper documents, folders, newspapers,
> catalog, magazines) disintegration (e.g., microfilm, microfiche, ID
> cards, VHS tapes, audio cassettes, CD ROM, floppy disks,
> computer tapes and computer hard drives) and incineration (e.g.,
> paper documents, maps, files, envelopes, manuals, newspapers,
> catalogs, magazines, blue prints).

FAC Ex. A at 22-23.

The purpose of this segment of the MAS is "to provide Federal agencies with a

customized plan for destroying government documents that is unique and cost effective to their

needs."  Id. at 23.  The contract provides that "[t]hese services may be used on a nonmandatory

basis" by government agencies and "may be performed at the contractor's facilities or the

ordering agency's facilities."  Id.  Federal law obliges each federal agency "to establish and

maintain" its own program to manage and dispose of agency records.  FAC ¶ 54 (citing 44

U.S.C. § 3102.  The National Archives and Records Administration ("NARA") oversees each

agency's document and record disposition programs while the GSA is responsible for overseeing

economy and efficiency in records management.  Id. ¶ 57.

The GSA schedule states in relevant part,

> The following methods for [Destruction Services] may be obtained
> through these material destruction options[:]
> A) SHREDDING: Include both on-site and off-site for shredding
> services, which is designed to handle a variety of classified and
> unclassified materials.  <u>Shredders shall be designed to produce
> residue particle size not exceeding 1/32 inch in width with a 1/64-
> inch tolerance by ½ inch in length.</u>  There is no need to
> separate paper grades or remove staples, clips or other bindings.

FAC Ex. A at 23 (emphasis supplied).[3]

Vendors must also certify destruction with a signed certificate showing the date of destruction and the material destroyed that must be signed by "the individuals designated to destroy and witness the destruction."  <u>Id.</u> at 24.  "Destruction officials shall be required to know, through their personal knowledge, that such material was destroyed" and, "[i]f required, the contractor must destroy Government material in accordance with record disposition schedules established by the agency."  <u>Id.</u>

Knisely's <u>qui</u> <u>tam</u> claim hinges on his assertion that the Government "clearly and unambiguously requires that document shredding services provided to United States government agencies through [the] GSA  Schedule [] must use shredders designed to produce residue particles" no larger than the size described above.  FAC ¶ 87.  He alleges that the import of this size constraint arises from the difference between on-site mobile shredders and off-site equipment.  <u>Id.</u> ¶ 100.  Federal agency customers typically deposit documents for shredding into locked consoles throughout their offices, which the shredding vendor empties into an on-site mobile truck or carries off-site to do the shredding.  <u>Id.</u> ¶¶ 98, 99.  About 95% of mobile shredder trucks use a method called "pierce and tear" that shreds more quickly and cheaply than off-site shredders but they cannot achieve the small size shreds described above.  <u>Id.</u> ¶¶ 101, 102.

---

[3] These specifications have been amended effective January 1, 2011 to permit a range of methods including so-called "pierce and tear" and "strip cut with indefinite length" shred.  <u>See</u> MTD Ex. A at 5.

Knisely contends that the pierce-and-tear method "frequently leaves large sections of documents, and in some cases entire documents, intact and easily readable." Id. ¶ 103.

Based on his more than thirty years' experience in the business, Knisely alleges that the smallest shred size a mobile shredding truck can produce is 3/8 inch, and very few such trucks are in operation. Id. ¶ 104. Shredded paper is generally sold for recycling but he asserts that the residue particle size described in the GSA schedule is too small for that use. Id. ¶ 105-107. Cintas sells its customers' shredded documents to Georgia-Pacific Corporation to be recycled as toilet tissue. Id. ¶ 174.

Knisely alleges that Cintas claims its document-destruction business handles confidential information and helps businesses mitigate risk, but that Cintas has repeatedly failed to shred government documents in conformity with the GSA schedule. Id. ¶¶ 165-167. On October 13, 2009, a Cintas representative, Jim Duchess, allegedly stated that Cintas's standard shred size is approximately 5/8 inches wide by 2 ¼ inches long and, two days later, he is said to have stated that Cintas does not have the equipment needed to meet the shredding sizes specified in the GSA schedule. Id. ¶¶ 170, 171. Knisely contends that Cintas has therefore acknowledged that "it does not operate shredding equipment that can satisfy the shred size specifications mandated by" the GSA schedule. Id. ¶ 175.

Knisely alleges that Cintas has been awarded many federal agency shredding contracts, including:

| Agency | Date | Place |
| --- | --- | --- |
| Department of Veteran Affairs | 3/10/2009 | California |
| Social Security Administration | 12/31/2008 | Kansas |
| Department of Homeland Security<br>--Bureau of Citizenship & Immigration | 10/1/2008 | Missouri |
| Department of Justice | 8/28/2008 | District of Columbia |
| Department of Veteran Affairs | 10/31/2007 | Florida |

| Department of Justice | 9/4/2007 | District of Columbia |
| Department of Health and Human Services | 7/18/2007 | Ohio |
| Department of Transportation | 3/22/2007 | District of Columbia |
| General Services Administration | 11/30/2006 | District of Columbia |
| Social Security Administration | 6/30/2006 | Kansas |
| Department of Health and Human Services -- NIH | 9/28/2005 | Maryland |

Id. ¶ 176.

Knisely cites only one specific shred residue size for one agency among these Cintas clients -- that is, the Social Security Administration -- which adopted a maximum shred size of 5/8 inch square.  Id. ¶ 94.[4]

Knisely's False Claims Act allegations rest on several contentions.  First, he alleges that Cintas has "submitted numerous false claims for payment to the United States. . . for shredding services that fail to comply with the shred size mandated" in the GSA schedule.  Id. ¶ 178.  He also contends that Cintas has submitted false records to federal agencies including the required Certificates of Destruction, despite not having delivered the mandated services. Id. ¶¶ 179, 181, 182.  Finally, Knisely alleges that in places where Cintas does not operate it farms out some shredding to subcontractors who are managed by an Ohio-based company, CB Tech.  Id. ¶ 185.  CB Tech manages government agency work for Cintas even though the subcontractors lack the equipment necessary to conform to the GSA schedule, id. ¶¶  194, 195, and these subcontractors' work is another source of false claims and false Certificate of Destruction reports that Knisely attributes to Cintas.  Id. ¶¶ 197, 198, 201.  The subcontracts also expose the United States to substantial financial damage and security risks, Knisely alleges.  Id. ¶ 202.

---

[4] Knisely also alleges that the "Veterans Administration" maintains a shred residue standard no larger than 1 mm by 5 mm, FAC ¶  93, but it is unclear whether he refers to the predecessor to the Department of Veteran Affairs or any one of the three subdivisions of the present department. We therefore disregard this allegation.

2.      Lanham Act Violations

Knisely also makes a claim under the Lanham Act alleging that Cintas touts its GSA schedule and agency contracts to promote its shredding business in the private sector through trade-show appearances and press releases that do not reveal its noncompliance.  Id. ¶¶ 203-210. Knisely alleges that Cintas marketed and advertised so-called SmartShred events to which it dispatched mobile shredding trucks that Cintas claims "give the public a chance to safely dispose of confidential information" in compliance with "regulatory requirements."  Id. ¶¶ 212, 214, 215. According to Knisely, Cintas's advertising video further claims that "Cintas on-site shred units are equipped with SmartShred, our custom shredding process that cuts paper into unidentifiable confetti, not strips."  Id. ¶ 216.  Elsewhere, Knisely alleges, Cintas has claimed it shredded documents "by pierce [and] tear method to meet the highest (DIN Level 6) security standards," where DIN Level 6 is the National Security Agency's standard for shredding top-secret documents (1 mm x 5 mm or smaller), id. ¶ 217.  In fact, he alleges, the SmartShred process is nothing more than the pierce-and-tear method used in most mobile shredding trucks which neither destroys documents nor renders them unidentifiable.  Id. ¶¶ 218, 219.

Knisely alleges that Cintas's dependence on paper-sale profits is the reason it does not shred to the DIN Level 6 standard it advertises.  Id. ¶¶ 222-227.  Knisely claims that recycled paper sales nearly doubled fiscal 2010 revenue growth in Cintas's Document Management Services Division -- which includes its Government and non-government shredding business -- and that paper sale-price declines in 2012 dampened the segment's revenue growth that year.  Id. ¶¶ 224, 225.

Knisely also alleges that Cintas misrepresents its degree of quality control by citing its AAA certification by the National Association for Information Destruction ("NAID") which

Cintas states "verifies that Cintas adheres to the stringent information destruction security practices and standards defined by the organization." Id. ¶ 229. A Cintas promotional video on YouTube describes how "shredded material is securely transported back to the Cintas Document Management facility, where it is baled and prepared for safe transfer to the recycler." Id. In fact, Knisely alleges, Cintas depends on CB Tech and its subcontractors -- who are not certified (but agree to indemnify Cintas and CB Tech for any claim arising out of the subcontractors' shredding). Id. ¶¶ 230-233. In November of 2012, CB Tech faxed a Cintas work order for its client Shopko Hometown to Security Shredding Service, even though Security Shredding Service was not certified by, or a member of, NAID. Id. ¶¶ 235-237. Knisely contends that Cintas's customers "rely on the company's assurances that they will receive services from an entity that 'adheres to the stringent information destruction security practices' required by NAID, but they instead often receive the services of independent shredding companies that have not been certified as adhering to those standards." Id. ¶ 239.

Knisely also alleges that CB Tech distributes Cintas labels to its subcontractors to place on the containers in which customers dispose of papers, creating an appearance that Cintas employees are performing the work, id. ¶ 240, but that the subcontractors dispose of materials according to their own practices, which CB Tech oversees. Id. ¶¶ 243, 244.

Knisely alleges that Cintas's misrepresentations about its GSA schedule compliance, from which it profits through paper sales, and its advertised document-destruction abilities, deceive customers. Id. ¶¶ 248-249. As a direct competitor, Knisely Security has allegedly been, and continues to be, injured by Cintas's misrepresentations. Id. ¶ 251. Knisely Security claims to have lost the following business to Cintas at least in part because of customers' reliance on Cintas's misleading representations:

| Company | Location | Date switched |
|---|---|---|
| Edward Jones (7 branches) | Bellefonte, PA<br>State College, PA (2)<br>New Cumberland, PA<br>Lemoyne, PA<br>Harrisburg, PA<br>Camp Hill, PA | August 2012 |
| CorVel Corp. | Mechanicsburg, PA | April 2012 |
| Geisinger-Shamokin Area<br>   Community Hospital | Coal Township, PA | February 2012 |
| Community Services Group | Williamsport, PA | November 2011 |
| TruGreen/Chemlawn | Lamar, PA | October 2011 |
| William Penn Nursing Home | Lewistown, PA | August 2010 |
| Mount Nittany Medical Center | State College, PA | November 2008 |
| First National Bank | State College, PA<br>Huntingdon, PA<br>Holidaysburg, PA | August 2008 |
| Sycamore Manor Health Center | Montoursville, PA | 2008 |

Id. ¶¶ 252, 253.


C.     Procedural History

On October 21, 2013, Cintas filed a motion to dismiss both of Knisely's claims pursuant

to Fed. R. Civ. P. 9(b) and 12(b)(6).  Knisely contends, in opposition, that he has satisfied the

strictures of Rule 9(b) in meeting the pleading standards for Cintas's alleged False Claims Act

violations, and successfully alleged Lanham Act violations under Rule 8 -- the pleading standard

he contends governs such claims.  Cintas replies that (1) the government's shredding standard is

permissive; (2) Knisely fails to allege fraud with requisite specificity with regard to Cintas's

agreements with individual federal agencies; and (3) Knisely's Lanham Act claim fails because it

relies on the flawed allegations of GSA schedule violations and does not allege with requisite

specificity how Cintas's advertisement misled customers, under either Rule 9(b) or Rule 8 --

conclusions that Knisely disputes in response.

II.    **Discussion**

    A.    Legal Standard

        1.    Motion to Dismiss for Failure to State a Claim

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 678.

Our Court of Appeals requires district courts considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in their favor, see McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks omitted).  To survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level on the assumption that the allegations in

the complaint are true (even if doubtful in fact)." <u>Victaulic Co. v. Tieman</u>. 499 F.3d 227, 234

(3d Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555).

        2.    <u>Pleading Standard Under The False Claims Act</u>

      It is well-established that claims under the False Claims Act must be pled with

particularity under the special pleading standard of Fed. R. Civ. P. 9(b), which states in relevant

part that "[i]n alleging fraud. . ., a party must state with particularity the circumstances

constituting fraud[.]" <u>See United States ex rel. Schmidt v. Zimmer, Inc.</u>, 386 F.3d 235, 242 n.9

(3d Cir. 2004); <u>see also United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs.,

Inc.</u>, 149 F.3d 227, 234 (3d Cir. 1998); <u>accord</u> Gold v. Morrison-Knudsen Co., 68 F.3d 1475,

1477 (2d Cir. 1995) (citing cases).

      This heightened pleading standard serves a dual purpose.  Requiring plaintiffs to plead

with particularity "place[s] the defendants on notice of the precise misconduct with which they

are charged" and also "safeguard[s] [them] against spurious charges of immoral and fraudulent

behavior." <u>Seville Indus. Mach.  Corp. v. Southmost Mach. Corp.</u>, 742 F.2d 786, 791 (3d Cir.

1984).  In Judge Easterbrook's oft-cited phrasing, plaintiffs must support their fraud allegations

under Rule 9(b) with all the essential detailed factual circumstances that constitute "the first

paragraph of any newspaper story" that is, "who, what, when, where and how." <u>DiLeo v. Ernst

& Young</u>, 901 F.2d 624, 627 (7th Cir. 1990) (cited in <u>In re Rockefeller Ctr. Props., Inc. Sec.

Litig.</u>, 311 F.3d 198, 217 (3d Cir. 2002).  Our Court of Appeals has adopted a "flexible"

alternative when plaintiffs cannot plead particularized evidence of a false claim, holding the

plaintiff need not allege "date, place or time" if he can "inject[]precision and some measure of

substantiation" by some other means into his allegations of fraud.  <u>Seville</u>, 742 F.2d at 791.

      As Wright and Miller teach, the degree of pleading particularity required under Rule 9(b)

rests on the nature of the underlying fraud claim.  5A Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure, § 1298.  While a simple allegation of fraud may suffice under the Bankruptcy Code, "considerable pleading particularity may be necessary to satisfy Rule 9(b) and to state a claim under the federal civil false claim statutes."  LaCorte, 149 F.3d at 234.

Our Court of Appeals has not specifically addressed how the Rule 9(b) pleading requirements deal with the false-claim elements.  Knisely cites cases from our district court colleagues to urge that we apply a "generous" standard for Rule 9(b) under which he need not identify specific claims for payment.  Mem. in Opp. at 12.  But Knisely misconstrues the Rule's requirements as it pertains to his claim.  He relies on United States ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295 (3d Cir. 2011), in which our Court of Appeals noted that "to our knowledge we have never held that a plaintiff must identify a specific claim for payment at the pleading stage of the case to state a claim for relief."  Id. at 308 (emphasis in original).  But that passage referred specifically to the district court's erroneous dismissal of a False Claims act case for a failure to plead under the Rule 12(b)(6) standard for a motion to dismiss, where the district court explicitly declined to apply the Rule 9(b) pleading requirements.  Tellingly, our Court of Appeals then continued in Wilkins, "In any event. . . the question of whether a plaintiff, at the pleading stage, must identify representative examples of specific false claims that a defendant made to the Government in order to plead an FCA claim properly is a requirement under the more particular pleading standards of Rule 9(b)."  Id.  The Court thereafter cited with approval Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993 (9th Cir. 2010), where that Circuit held:

> We do not embrace the . . . categorical approach that would, as a matter of course, require a relator to identify representative examples of false claims to support every allegation[.] . . . We … conclud[e], in accord with general pleading requirements under

12

> Rule 9(b), that it is sufficient to allege "particular details of a
> scheme to submit false claims paired with reliable indicia that lead
> to a strong inference that claims were actually submitted."

Id. at 998-99 (quoting United States ex rel. Grubbs v. Ravikumar Kanneganti, 565 F. 3d 180, 190

(5th Cir. 2009)).

Our colleagues have adopted that seemingly "flexible" standard for particularity where

the specific details of claims have been elusive.  See, e.g., United States ex rel. Schumann v.

AstraZeneca PLC, 2010 WL 4025904 at *10 (E.D.Pa. Oct. 13, 2010) (Ditter, J.); see also United

States ex rel. Budike v. PECO Energy, 897 F.Supp.2d 300 (E.D.Pa. 2012) (Surrick, J.).  In short,

even under our Court of Appeals's so-called flexible approach to Rule 9(b), a relator must offer

particulars to satisfy both the elements of an FCA claim and the Rule 9(b) pleading standards.

We will apply that standard to Knisely's claims.


3.      Pleading Standard Under The Lanham Act

The Lanham Act protects the owners of federally registered trademarks from unfair

competition by requiring, inter alia, that a plaintiff demonstrates a defendant has made a false or

misleading statement as to his own product.  15 U.S.C. § 1125(a)(1)(A).  Defendant Cintas urges

us to adopt the intermediate pleading standard in Max Daetwyler Corp. v. Input Graphics, Inc.,

608 F. Supp. 1549 (E.D.Pa. 1985), in which Judge Pollak held that:

> The Lanham Act claim. . . is not a pure "fraud" claim and, thus,
> need not satisfy all of the pleading requirements which have been
> imposed under Rule 9.  But the policies which underlie Rule 9's
> requirement that the nature of an alleged misrepresentation be
> pleaded with specificity are equally applicable [here].  In litigation
> in which one party is charged with making false statements, it is
> important that the party charged be provided with sufficiently
> detailed allegations regarding the nature of the alleged falsehoods
> to allow him to make a proper defense.

Id. at 1556.  Knisely contends his Lanham Act allegations need only meet the standard of Rule

8, which supplies general rules for pleading, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct. No technical form is required[,]" Rule 8(d)(1).

Our Court of Appeals has not ruled whether district courts should apply a heightened pleading standard for Lanham Act claims. Courts in the Circuit remain divided since the Supreme Court's decisions in Iqbal and Twombly, which required that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).[5] But we conclude from a review of those cases that, for the most part, those courts applying Judge Pollak's intermediate pleading standard to Lanham Act claims adopted it before Iqbal and Twombly. As our Court of Appeals noted in Fowler, after these two Supreme Court decisions "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." Fowler, 578 F.3d at 210.

Because Twombly and Iqbal stepped up the Rule 8 pleading requirements, we hold that a Lanham Act allegation requires only that a plaintiff plead sufficient facts to support his allegation, id. at 211, and nothing more.[6]

---

[5] See Evco Technology & Development Co., LLC v. Buck Knives, Inc., 2006 WL 2773421 at *4 (E.D.Pa. Sept. 22, 2006) (citing with approval Max Daetwyler Corp. v. Input Graphics, Inc., 608 F. Supp. 1549 (E.D.Pa. 1985); but see Mycone Dental Supply Co., Inc. v. Creative Nail Design, Inc., 2012 WL 3599368 (D.N.J. Aug. 17, 2012) (declining to decide whether to apply a heightened pleading standard) and UHS of Delaware, Inc. v. United Health Services, Inc., 2013 WL 1308303 (M.D.Pa. Mar. 28, 2013) (declining to adopt the Max Daetwyler intermediate pleading standard in a Lanham Act case, inter alia, because it antedates the shift in pleading standards as a result of Twombly and Iqbal.).

[6] Both the Fourth Circuit, in Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009), and the Sixth Circuit, in Hensley Mfg. v. ProPride, Inc., 579 F.3d 603 (6th Cir. 2009), applied the Twombly/Iqbal standard to Lanham Act claims.

B.      The False Claims Act Allegations

One who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" faces liability under Section 3729(a)(1)(A) and (B).[7]

To establish a prima facie False Claims Act violation, a plaintiff must prove that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent."  Wilkins, 659 F.3d at 305  (citing Schmidt, 386 F.3d at 242).  There are two categories of false claims under the FCA, a factually false claim where the claimant misrepresents the goods or services it provided to the Government and a legally false claim where the claimant knowingly falsely certifies compliance with a statute or regulation that is a condition for Government payment.  Id.

Knisely alleges Cintas violated the FCA by making factually false and legally false claims because he contends that Cintas did not fulfill its contractual obligation to shred to the requisite residue size and that it falsely certified it had done so, for the contractual work it did directly and for the work it farmed out to CB Tech's supervision.  Mem. in Opp. at 1, 7-8, 10. He urges that his forty-nine-page, 266-paragraph complaint amply states a claim for violation of Section 3729(a)(1)(A) by: (1) alleging the false submission for payments, id. at 14; (2) naming federal agencies contracts, with date and place of performance, awarded to Cintas, id. at 15; (3)

_____

[7] As amended by the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617, 1625 (applies FERA amendments to all claims under the False Claims Act pending on or after June 7, 2008).   See also United States ex rel. Wilkins v. United Health Group, Inc., 659 F.3d 295, 303-304 (3d Cir. 2011).

15

reiterating the GSA schedule's shred-size requirement, id.;  and (4) demonstrating Cintas's knowing acts through its representative's statements, id. at 16.  He also contends he states a claim under Section 3729(a)(1)(B) because (1) he alleges on information and belief that Cintas submitted false records of document destruction as it never possessed the equipment necessary to comply with the GSA schedule, id. at 17; (2) the false submissions were knowing acts because the company representative acknowledged Cintas lacked the requisite equipment -- and we "thus can infer that [Cintas] knew the records it submitted. . . were false," id. at 18; and (3) these false-record submissions were "material" to Cintas's false claims for payment because the certifications were necessary for payment, id.

Knisely also contends in his reply that Cintas's motion to dismiss should be denied because the plain language of the GSA schedule is mandatory ("Shredders shall be designed to produce residue particle size not exceeding 1/32 inch in width with a 1/64-inch tolerance by ½ inch in length"), and any conclusion otherwise is premature on a motion to dismiss. Id. at 19-22.

Cintas cites three defects in Knisely's FCA claim:  (1) the GSA schedule does not require micro shredding but rather plainly states destruction "may be obtained" through various means, id. at 15 (citing to FAC Ex. A at 22); (2) each federal agency must "establish and maintain" its own destruction program, id. (id. at 22), which Cintas negotiates individually with each agency, id. (citing to FAC ¶ 176); and (3) the GSA schedule is ambiguous because its micro shredding standard is at odds both with the federal requirement for individual agency standards, id., and the size limits of mobile on-site shredders that the GSA schedule permits, id. at 16.

More to the point, Cintas contends that Knisely has failed to allege an FCA violation with the requisite Rule 9(b) precision in that Knisely failed to identify a single false claim, or the time, place, or individuals allegedly involved in submitting any claims, id. 17-19.  That failure, Cintas

contends, is fatal to Knisely's claims.

We agree.  Knisely's complaint, replete with strongly worded allegations of unlawfulness, nevertheless fails to meet the exacting pleading standards under Rule 9(b) for an FCA violation. For that reason we will grant Cintas's motion to dismiss the FCA claim.

We first address Knisely's Section 3729(a)(1)(A) claim that Cintas presented a false claim for payment.  As we noted earlier, our Court of Appeals noted that a relator "must identify representative examples of specific false claims" at the pleading stage of an FCA claim. Wilkins, 659 F.3d at 308 (emphasis supplied).   In the absence of a specific false claim to support every allegation, particular details of the scheme paired with reliable indicia suffice.  Ebeid, 616 F.3d at 998-99.  But as our Court of Appeals held in United States ex rel. Quinn v. Omnicare Inc,. 382 F.3d 432 (3d Cir. 2004), a relator may not "merely . . . describe a private scheme in detail [and] then . . . allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government."  Id. at 440 (citing with approval United States ex rel. Clausen v. Laboratory Corp. of America, 290 F.3d 1301, 1311 (11th Cir. 2002) (affirming a motion to dismiss for failure to state "an essential element" of an FCA claim by failing to identify an actual claim or allege such information as the amount of false charges; when false bills were submitted, billing policies or practices).

Here, Knisely offers a picture that is both internally inconsistent and lacks the requisite specificity to maintain an FCA claim.  Knisely alleges that each federal agency must by law devise its own customized record-disposition plan, FAC Ex. A at 23, and indeed offers an agency-specific shredding standard for the Social Security Administration, FAC ¶ 94 -- yet he contends that the GSA shred size limitation is mandatory, controlling, and supersedes agencies'

particularized needs, FAC ¶ 87.  He alleges that Cintas's contracts with eleven federal agencies are subject to fraudulent claims for nonconformity to the GSA shred size, id. ¶ 176, but offers only a single agency shred specification -- the Social Security Administration -- that exceeds the GSA stricture, id. ¶ 94.   He offers no information that any of the other federal agency contracting with Cintas actually adopted the GSA shred standards he alleges were mandatory and Government-wide.

Knisely's claims fall far short of Judge Easterbrook's newspaper-reporting standard:  He does not allege who at Cintas perpetrated any fraud, or what billing scheme or practices those individuals may have employed, or where or when or how the fraudulent billing occurred among Cintas's many federal agency clients over the multi-year fraud period he alleges.  See also Budike, 897 F.Supp.2d at 318 (relator adequately alleged who, what, where and how without identifying a specific claim).  And Knisely's claims also fall short of our Court of Appeals's flexible alternative standard because he failed to inject precision or any measure of substantiation into his claims of "a company-wide effort to defraud the government."  Mem. in Opp. at 29. Knisely argues that his allegation that Cintas won eleven federal agency contracts over a four-year period suffices to "identif[y] specific orders under which Cintas submitted its false claims," id. at 14-15.  But those spare facts fail to substantiate that any claims, or even a single claim, during that time was false.  He contends that it is enough to allege, as he does, that Cintas lacked the shredders to satisfy the GSA standard.  Id. at 15-16.  But without alleging which shredding standards the federal agencies mandate, his generalization does not substantiate his claim that Cintas's payment claims under those contracts were false.

For similar reasons, we find that Knisely's allegations that Cintas violated Section 3729(a)(1)(B) by creating false records of document-destruction certification also fall short of

the requisite Rule 9(b) particularity.

A "false certification" theory of liability arises where the claimant knowingly and falsely certifies it has complied with a statute or regulation, the compliance with which is a condition for Government payment.  United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008).   Our Court of Appeals and other Courts of Appeals recognize a distinction between express and implied false certification, which depends on whether compliance is overtly certified or implied by the act of submitting a claim.  See id.; see also Wilkins, 659 F.3d at 305.

Here, Knisely alleges express false certification.  He cites the GSA schedule's requirement for a certificate of destruction, FAC ¶ 88, and alleges that, "[d]efendant Cintas has, upon information and belief, submitted to Federal agencies numerous false records in support of its false claims," id. ¶¶ 179, 198.

Rule 9(b) permits pleading "based upon information and belief", particularly where key factual information remains within the defendant's control.  In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3d Cir. 1997).  But such allegations are permissible "only if the pleading sets forth specific facts upon which the belief is reasonably based."  State Farm Mut. Auto. Ins. Co. v. Ficchi, 2012 WL 1578247 at *5 (E.D. Pa. May 4, 2012) (Pratter, J.). District courts in this Circuit have sometimes obliged plaintiffs even in the pleading stage of FCA actions to provide a statement of efforts undertaken to obtain information from the opposing party.  See United States ex rel. Bartlett v. Tyrone Hospital, Inc., 234 F.R.D. 113, 122 (W.D.Pa. 2006) (granting defendants' motion to dismiss).  As Judge Buckwalter held in another FCA case, "cursory allegations, made on information and belief alone, are unquestionably insufficient to open the door to broad and burdensome discovery."  United States ex rel. Spay v.

<u>CVS Caremark Corp.</u>, 2013 WL 4525226 at *2 (E.D.Pa. Aug. 27, 2013).

We find Knisely's allegations concerning Cintas's certifications practices -- in eleven federal contracts over a four-year-plus period -- similarly cursory and therefore insufficient to maintain an action for a Section 3729(a)(1)(B) violation.

Finally, Knisely also asserts claims concerning Cintas's agreement with CB Tech and the subcontractors it oversees "on information and belief."  FAC ¶ 195.  We will grant Cintas's motion to dismiss these allegations for the Rule 9(b) pleading deficiencies outlined above. Because we find that Knisely failed to meet the Rule 9(b) pleading requirements for an FCA claim, we need not address Cintas's other contentions concerning the ambiguity in the GSA schedule.[8]

C.      <u>The Lanham Act Allegations</u>

Section 43 (a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits a "false or misleading description of fact, or false or misleading representation of fact" which "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

To establish a Lanham Act claim based on a false or misleading representation a plaintiff must show that (1) the defendant has made false or misleading statements as to his product; (2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods travel in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff, in terms of declining sales, loss of good will and such.  <u>Warner-Lambert</u>

---

[8]  It bears noting that since those claims appeared on our docket on March 18, 2010 -- almost exactly four years ago -- Knisely has had abundant time to satisfy Rule 9(b)'s strictures.

Co. v. BreathAssure, Inc., 204 F.3d 87, 91-92 (3d Cir. 2000).

Lanham Act liability arises when a representation is either (1) literally false or (2) literally true or ambiguous but has the tendency to deceive consumers.  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 290 F.3d 578, 586 (3d Cir. 2002).  In analyzing whether a representation is "literally false," the court must determine the unambiguous claims made and whether those claims are false; "only an unambiguous message can be literally false."  Id. at 587 (internal citation omitted) (emphasis in original).  If a statement is literally true but tends to deceive consumers, it must be "tested by public reaction."  Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 943 (3d Cir. 1993) (internal citation omitted).   But if a plaintiff proves a claim is literally false, a court may grant relief without considering the second prong.  Warner-Lambert, 204 F.3d at 92 (citing Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharmaceuticals, Inc., 19 F.3d 125, 129 (3d Cir. 1994).

Knisely claims Cintas violated the Lanham Act by falsely (1) touting its government-agency work and GSA schedule award at a trade show and in two press releases while concealing its noncompliance under that schedule; (2) representing the capability and quality of its shredding by exaggerating its disposition of clients' confidential information in conformity with regulatory and National Security Agency standards; and (3) misrepresenting its quality controls while relying on subcontractors whose work it neither monitors nor controls.  FAC ¶¶ 203-244.  Knisely contends that the first representation is misleading because it conveys the unwarranted impression that Cintas is "trusted by the United States to shred government documents," Mem. in Opp. at 31.  He alleges that these representations tended to deceive customers who do business with Cintas because of their reliance on its misrepresentations,

causing Knisely's central Pennsylvania shredding business to suffer.  FAC  ¶¶ 247-253.

Cintas argues that any Lanham Act claim predicated on its failure to disclose its submission of false claims under the GSA schedule must fail because the FCA claim fails as a matter of law.  MTD at 22.  Cintas also avers that other statements attributed to it -- the existence of the GSA schedule; its use of SmartShred; its NSA shred-size claim -- are literally true or puffery as in the case of the National Security Agency claim.  Id. at 23-24.  Cintas further contends Knisely does not allege that Cintas's use of subcontractors or the YouTube video description misled any customers or violated any agreements.  Id. at 25.  Finally, because Cintas contends that the statements at issue are literally true, it argues that Knisely fails to plausibly allege damage because he has failed to tie any alleged Cintas misrepresentation to a customer lost for Knisely.  Id. 25-26.

As noted above, we address Knisely's claims under the Rule 8 pleading standard. Accordingly, we accept all Knisely's well-pled allegations as true and consider only "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  Fowler, 578 F.3d at 211 (internal quotation omitted).   A district court weighing a motion to dismiss asks only "whether the claimant is entitled to offer evidence to support the claims."  Twombly, 550 U.S. at 564 n.8 (internal quotation omitted).

The gravamen of Knisely's first Lanham Act claim is that Cintas misstated the degree of its compliance with GSA shredding standards in order to misrepresent that it is "trusted by United States Government to shred sensitive documents."  FAC ¶ 247.  Under the standard established in Novartis, a "literally false" representation may be either explicitly so or "conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated."  Novartis, 290 F.3d at 586-87

(quoting Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 35 (1st Cir. 2000).  As our Court of Appeals held in Castrol, we must analyze the message conveyed in full context. "When the challenged [representation] is implicitly rather than explicitly false, its tendency to . . . mislead[], confus[e] or deceiv[e] should be tested by public reaction."  Castrol, 987 F.2d at 943.  But that determination is on the merits and cannot be made at the pleading stage.  The court may accept plaintiff's allegations at the pleading stage that consumers were misled.[9]  See Alpha Pro Tech, Inc. v. VWR Intern. LLC, 2013 WL 6179065  at *22 (E.D.Pa. Nov. 26, 2013) (Pratter, J.).  Therefore, we cannot dismiss Knisely's claim that private shred customers were misled by Cintas's contention it was in compliance with GSA schedule standards, FAC ¶ 247.

Nor can we dismiss Knisely's claim that Cintas allegedly misled customers about its adherence to "stringent information destruction security practices," id. ¶ 229, while allegedly farming out a portion of its contracts to subcontractors who lack GSA certification and yet label disposal bins with Cintas's name.  Id. ¶¶ 230-240.  If a representation is literally true but misleading, as Knisely alleges, a plaintiff cannot prevail "by arguing how consumers could react; [he] must show how consumers actually do react."  Highmark Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 171 (3d Cir. 2001) (citations and internal quotation omitted).  His allegations, taken as true, entitle him to offer evidence to support his contention and we cannot, therefore, grant Cintas's motion here.

Similarly, we cannot dismiss the claimed representation that Cintas shredded documents "by pierce [and] tear method to meet the highest (DIN Level 6) security standards," where DIN

---

[9] Although we must accept Knisely's allegations as pled, we caution him that the bar on the merits is a high one, as the Novartis court held:  "The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion, however, the less likely it is that a finding of literal falsity will be supported."  Novartis, 290 F.3d at 587 (quoting with approval United Indus. Corp. v. Clorox Co. 140 F.3d 1175, 1181 (8th Cir.1998)).

Level 6 is the National Security Agency's standard for shredding top-secret documents, 1 mm x 5 mm or smaller, far smaller than can be achieved by pierce and tear.  FAC  ¶ ¶ 103, 217.  Cintas contends that claim is mere puffery.   "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language."  <u>Castrol</u>, 987 F.2d at 945.  The "puffing" rule amounts to a seller's privilege "to lie his head off," but only so long as "he says nothing specific."  <u>Id.</u> (citing W. Page Keeton, et al. <u>Prosser and Keeton on the Law of Torts</u> § 109, at 756-57 (5th ed. 1984)).  Had Cintas claimed only to offer the "highest" security standard, that general claim of superiority would have been puffery.  But a claim that is both specific and measurable, as here, is one that may be tested and is therefore actionable under the Lanham Act even if it does not invoke a direct comparison to a competitor.  <u>Id.</u>  Cintas also contends the allegation, stripped of context, fails to indicate whether the interpolated parenthetical -- (DIN Level 6) -- was part of Cintas's representation.  Reply at 11.  But Knisely's allegation meets Rule 8 pleading standards and the elements of a Lanham Act claim and we cannot, therefore dismiss it at the pleading stage.

        We will, however, dismiss the claim concerning SmartShred's ability to reduce documents to "unidentifiable confetti" to comply with "regulatory requirements."   "Taken together," Rule 8(a) and Rule 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules."  <u>In re: Westinghouse Sec. Litig.</u>, 90 F.3d 696, 702 (3d Cir. 1996) (internal citation omitted).   Dismissal under Rule 8 is proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]." <u>Binsack v. Lackawanna Cnty. Prison</u>, 438 Fed. Appx. 158, 160 (3d Cir. 2011).  Knisely fails to allege that the SmartShred statement was either false or misleading because it hinged on Cintas's GSA schedule compliance as opposed to the vague and undefined regulatory requirements.

**III.**    <u>**Conclusion**</u>

For the reasons stated above, we will grant Cintas's motion to dismiss as to the False Claims Act and the Lanham Act allegations concerning SmartShred.  But we will deny Cintas's motion to dismiss the Lanham Act allegations that it misleadingly represents its government business, quality controls, and the residual size of its pierce and shred document destruction to gain customers at Knisely's expense.

BY THE COURT:

<u>/S/ STEWART DALZELL, J.</u>